# EXHIBIT A

## ATTACHMENT A

Derivative Counsel have investigated the facts and applicable law regarding the alleged claims of Escala on whose behalf they are acting and the potential defenses thereto. Based on this investigation, Derivative Counsel have agreed with Escala that it is in the best interests of Escala and its shareholders to settle the Derivative Action on the following terms:

1.  In response to and in settlement of the Derivative Action, the Derivative Plaintiffs and Escala agree that Escala's current board of directors has adopted or will adopt by resolution, or other means as appropriate, changes in Escala's corporate governance as follows:

    A.  Board of Directors

        1.  Changes in Board and Management Composition

            a.  The Company has asked for and obtained the resignations from the Company's Board of Directors of two Afinsa-affiliated directors and a director who had formerly been affiliated with Afinsa.

            b.  Since May 22, 2006 (the date of filing of the Derivative Action), three new independent directors have been appointed to the Board of Directors, including Irving Kagan, an expert on corporate governance issues.

            c.  Overall, six of the Company's eight current directors were not directors on May 22, 2006, when the Derivative Action was filed.

            d.  Since May 22, 2006, two members of the Audit Committee have resigned and have been replaced by three new independent members.

            e.  The Board of Directors terminated the contract of Greg Manning, the Company's former CEO, for "cause" in April 2007, and determined not to renew the contract of Larry Crawford, the Company's former CFO in June 2006. These individuals were directly responsible for the accuracy of the Company's financial statements for the years in question.

2. <u>Director Independence</u>:

   a. The Board shall hold an executive session at least twice each year at which employee directors are not present.

   b. Escala has adopted a Non-Employee Director Compensation Program, which provides long-term incentive awards payable in stock, based on the appreciation of Escala stock.

3. <u>Chief Executive Officer Compensation</u>. During its consideration of the compensation of the Chief Executive Officer, the Compensation Committee shall meet in executive session, without the Chief Executive Officer.

4. <u>Designation of Lead Independent Director</u>. Unless the positions of Chairman of the Board and CEO of Escala are held by two separate individuals, the Board shall designate an independent director to act in a lead capacity to coordinate the other independent directors, as described below. The Lead Independent Director is responsible for coordinating the activities of the independent directors. In addition to the duties of all Board members (which shall not be limited or diminished by the Lead Independent Director's role), the specific responsibilities of the Lead Independent Director are to advise the Chairman of the Board and to undertake the following:

   a. Determine an appropriate schedule of Board meetings, seeking to ensure that the independent directors can perform their duties responsibly while not interfering with the flow of the Company's operations;

   b. Approve agendas for the Board and Committee meetings;

   c. Assess the quality, quantity, and timeliness of the flow of information from the Company's management that is necessary for the independent directors to effectively and responsibly perform their duties. Moreover, although the Company's management is responsible for the preparation of the materials for the Board, the Lead Independent Director may specifically request the inclusion of certain material;

    d.    Oversee the retention of consultants who report directly to the Board;

    e.    Ensure the Nominating and Governance Committee oversees compliance with and implementation of the Company's corporate governance policies and ensures that the Chairman of the Nominating and Governance Committee oversees the process to recommend revisions to the Corporate Governance policies;

    f.    Coordinate, develop the agenda for, and moderate executive sessions of the Board's independent directors and act as principal liaison between the independent directors and the Chairman of the Board and/or Chief Executive Officer on sensitive issues;

    g.    Evaluate, along with the members of the Compensation Committee and full Board, the Chief Executive Officer's performance and meet with the Chief Executive Officer to discuss the Board's evaluation; and

    h.    Recommend the membership of the various Board Committees, as well as selection of the Committee Chairs.

The Lead Independent Director shall have the authority to request that the Board of Directors approve the retention of such counsel or consultants as the Lead Independent Director deems necessary to perform his responsibilities and that their reasonable fees and expenses shall be paid by the Company.

5.    <u>Oversight of Chief Financial Officer</u>.  At each regularly scheduled Board of Directors meeting at which the Company's financial results are an item on the agenda, the Company's Chief Financial Officer or his designee shall provide a report that includes year-to-date financial results and quarterly or quarter-to-date financial results that include the Company's financial condition and prospects, including but not limited to, as appropriate under the circumstances, a discussion of all reasons for material increases in expenses and liabilities, if any, and material decreases in revenues and earnings, if any, including any modification or adjustment of reserve accounts or contingencies and management plans for ameliorating or reversing such negative trends and the success or failure of any such plans presented in the past.

3

6. <u>Outside Directorships</u>. Members of the Board of Directors should not have any interests that would materially impair his or her ability to (i) exercise independent judgment, or (ii) otherwise discharge the fiduciary duties owed as a director to the Company and its shareholders. Without limiting the generality of the foregoing, as a general matter candidates should not serve as members of the Board of Directors of companies with which the Company has in the preceding fiscal year conducted or expects to conduct in the current year business that is material to the Company's results of operations, taken as a whole. Under exceptional and limited circumstances, the Nominating and Corporate Governance Committee may approve the candidacy of a nominee who does not satisfy all of these requirements if it believes the service of such nominee is in the best interests of the Company and its shareholders.

B. <u>Internal Audit Function</u>

1. The Company has retained Citrin Cooperman & Company, LLP (certified public accountants) to assist the management of Escala with its monitoring and maintenance efforts regarding Section 404 of the Sarbanes-Oxley Act of 2002 and its internal controls over financial reporting. The scope of Citrin Cooperman's function includes updating Escala's SOX 404 documentation prepared in prior years, and testing of current key controls, including those relating to the Company's revenue recognition practices, accounting practices, financial reporting procedures and inventory valuation.

C. <u>Revenue Recognition and Accounting Policies</u>

1. The Chief Executive Officer and Chief Financial Officer shall be responsible for ensuring that the Company's revenue recognition policies conform to the requirements of Generally Accepted Accounting Principles ("GAAP"), as currently in effect or as amended, and are implemented and utilized throughout the Company. The Chief Executive Officer and Chief Financial Officer shall report to the Board of Directors or the Audit Committee on a regular basis regarding the implementation and operation of this policy. The Chief Executive Officer and Chief Financial Officer shall ensure that the Company revenue recognition policy is distributed to each Company employee who records or reviews the recording of revenue. Any questions

4

        regarding that policy, or its application, shall be directed to the Company's Chief Financial Officer, who shall as appropriate, inform the Chief Executive Officer.

    2.    To the extent valuations of inventory increase in the aggregate for a quarter by a material amount, such change shall be clearly disclosed, and the reasons for the change clearly explained, in the Company's financial statements.

D.    <u>Insider Trading Controls</u>

    1.    <u>Trading Compliance Program</u>. The Board of Directors shall develop and implement a comprehensive trading program (the "Trading Compliance Program") designed to ensure compliance with the Company's trading policies. This program shall contain provisions with respect to transactions in the Company's securities by directors and officers of the Company which are no less restrictive than those set forth by the NASDAQ or any other exchange on which the Company's shares are then listed, and shall take into account applicable federal securities laws and regulations.

    2.    Any corporate director or elected officer who acquires Company shares via option exercise, must retain 10% of the net shares acquired, after taking into account the sale of shares to pay taxes and the option exercise price, for at least 12 months or until such earlier time as the individual ceases to be a director of or an executive officer of the company as a result of death, resignation, termination or other reason.

    3.    <u>Disclosure of Sales and Purchases by Executive Officers and Directors</u>. The Company shall require the public disclosure of all sales or purchases of the Company's stock by any corporate executive officers or directors within 48 hours of such purchase or sale. Using Company stock or options to secure any loan to an executive officer or director or engaging in a swap, forward contract or other similar contract involving an executive officer's or director's stock shall be considered a "sale" and shall be so disclosed. The Company will take reasonable steps to ensure that all directors and officers file all forms that the SEC requires them to file concerning trading by directors, officers, and executive employees of the Company.

    4.    Failure to comply with the Company's Trading Compliance Program will result in appropriate sanctions, including, as

5

appropriate, disgorgement by the individual to the Company of all profits from the transaction, termination, or other appropriate disciplinary action.

5. No corporate officer or director shall directly or indirectly "short" the Company's stock or engage in "put" or call transactions involving the Company's stock.

E. Code of Conduct and Ethics

The Company shall maintain and disseminate to employees a Code of Conduct and Ethics appropriate in scope and content, which shall include, among other things, the following policies:

1. All directors will be urged to participate in regular continuing education every three years regarding directors' responsibilities and "best practices" corporate governance measures.

2. The Company's General Counsel will provide continuing education regarding directors' responsibilities and "best practices" corporate governance measures not less than annually.

3. The Company will require each employee to certify annually that he has reviewed, is familiar with and agrees to be bound by the Company's Code of Conduct and Ethics.

In addition:

1. The Audit Committee will adopt a Code of Ethics for Senior Financial Officers that supplements the Company's Code of Conduct and Ethics, which will provide more specific requirements and guidance on certain topics. The Code of Ethics for Senior Financial Officers will apply to the Chief Executive Officer, the Chief Financial Officer, the Controller and the heads of major divisions.

2. The Board will adopt a Code of Business Conduct and Ethics for Directors that applies to all directors and sets forth guidance with respect to recognizing and handling areas of ethical issues.

3. The Company will establish a Disclosure Committee, whose mandate is to ensure that all of the Company's public disclosure is full and fair and made on a timely basis.

4. The Company will amend its Disclosure Controls and Procedures to include, among other things, the following:

   a. To the extent the Company controls, is the sole source for, or directly participates in the determination of catalogue values, its role and participation in such a process should be fully and clearly disclosed in public filings, as appropriate. This recommendation shall *not*:

   preclude Company personnel, who are considered experts within their particular fields, from responding to unsolicited inquiries from third parties who, in the ordinary course of their business, are seeking opinions as to the value of particular material; or

   require mandatory disclosure of the Company's role in providing opinions.

   b. To the extent the Company participates in related-party transactions involving collectibles for which there is no published catalogue, the Company's role and participation should be fully disclosed to all interested parties and in public filings, as appropriate.

F. Director and Committee Requirements

   1. The Company shall at all times maintain the requisite number of directors who meet the standards for independence set forth by NASDAQ and/or the Securities and Exchange Commission, as the case may be.

   2. The Company's share ownership guidelines for its directors will align the interests of the Board with those of shareholders taking into account that share ownership requirements must ensure that Board members have a sufficient stake in the Company to share in the financial fortunes of shareholders while also considering the appropriate financial planning and needs of individual directors.

G. Nominating and Corporate Governance Committee. The Nominating and Corporate Governance Committee shall adopt the following policies, to the extent they are not already in place:

   1. The Nominating and Corporate Governance Committee, in consultation with the Chairman of the Board, the Lead Director (if

any) and the Chief Executive Officer, shall be responsible for periodic review and interpretation of the Company's corporate governance policies and the Corporate Governance Committee Guidelines, as well as consideration of other corporate governance issues, that may, from time to time, merit consideration by the entire Board;

2. The Nominating and Corporate Governance Committee, in consultation with the Chairman of the Board, the Lead Director (if any) and the Chief Executive Officer, shall consider and make recommendations to the Board concerning the appropriate size and needs of the Board;

3. The Nominating and Corporate Governance Committee, in consultation with the Chairman of the Board, the Lead Director (if any) and the Chief Executive Officer, shall identify candidates qualified to fill vacant Board positions. Candidates shall be selected for their character, judgment, business experience, time commitment, and acumen. The Committee shall have sole authority to retain (and terminate) any search firm to identify director candidates, including sole authority to approve the search firm's fees and other retention terms. The Committee shall select, or recommend that the full Board select, the director nominees for the annual meetings of shareholders;

4. The Nominating and Corporate Governance Committee shall establish performance criteria for itself and the full Board and evaluate itself, the full Board and individual members on a regular basis. Board evaluation shall include an assessment of whether the Board has the necessary diversity of skills, backgrounds, and experiences to meet the Company's ongoing needs. Individual director evaluations shall include high standards for in-person attendance at Board and committee meetings and consideration of absences; and

5. The Nominating and Corporate Governance Committee shall consider policies relating to the Board and directors, including committee structure and size, share ownership, and retirement and resignation.

H. <u>Valuations of Inventory</u>.

1. The Company's valuation of inventory for financial reporting purposes will be consistent with Generally Accepted Accounting Principles as determined by management in consultation with the Company's independent auditor.

I. Related-Party Transactions.

1. The Company's Audit Committee shall review proposed related-party transactions consistent with all of the provisions of the Company's "Policies and Procedures - Related Party Transactions."

J. Miscellaneous Provisions.

1. The Board shall adopt a resolution providing that, if the Company is required to prepare an accounting restatement due to the Company's material non-compliance with any financial reporting requirement under the securities laws, as a result of acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of the law by the Company's CEO, CFO or other executive officer, then the Company may, in the sole discretion of a disinterested majority of the Board of Directors, demand from the CEO, CFO or other executive office responsible for such acts or omissions any bonus or other incentive-based or equity-based compensation, and any profits from the sale of Escala's securities, received by that person from the Company during the 12-month period following the first public issuance or filing with the Commission (whichever first occurs) of the financial document embodying such financial reporting requirement.

2. The Board's Committees shall have the authority to request that the Board of Directors approve the retention of legal and/or other advisors of their choice, which advisors shall report directly to the Committee and whose reasonable fees and expenses shall be paid by the Company.

3. The Board or any Committee may request any officer or employee of the Company or the Company's outside counsel to attend any of its meetings or to meet with any of its members or consultants. Generally, such independent advice should be sought with the knowledge of the Chief Executive Officer. The Lead Independent Director, if any, may recommend to the Chairman the retention of consultants who report directly to the Board.

4. In January 2008, the Company instituted with respect to each division approval matrices for the approval of material transactions.

5. In June 2006, the Company shut down its operations that were previously engaged in the business of supplying material to Afinsa and over the course of the next several months, terminated all employees who had been involved in those operations. Two employees were subsequently rehired in order to maintain the accounting records while the Company's assets are being liquidated and to comply with the requirements of the Spanish fiscal authorities.

6. In September 2007, the Company retained a new national public accounting firm having over 300 public company clients. Escala shall have an annual audit performed by an independent auditor so long as the Company remains a publicly traded company. Such audit shall be conducted in accordance with the standards of the Public Company Accounting Oversight Board ("PCAOB"). At least once every three years, the Audit Committee will make an affirmative determination as to whether to retain or replace the Company's independent auditor.

7. The Compensation Committee shall recommend for review by the Board annual and long-term performance goals for the Chief Executive Officer and evaluate his performance against such goals and other relevant factors such as the performance of the Company's peer companies. The Compensation Committee shall also make recommendations to the full Board with respect to senior executive compensation.

8. The following compensation principles shall remain in effect:

a. Compensation arrangements shall emphasize pay for performance and encourage retention of those employees who enhance the Company's performance;

b. Compensation arrangements shall maintain an appropriate balance between the salary and long-term and annual incentive compensation;

c. In approving compensation, the recent compensation history of the executive, including special or unusual compensation payments, shall be taken into consideration;

        d.    Cash incentive compensation plans for senior executives shall link pay to achievement of financial goals set in advance by the Compensation Committee; and

        e.    The Nominating and Corporate Governance Committee shall review annually the compensation of directors.

Escala has no current intention to eliminate or limit the applicability of each of the ongoing measures described herein, and anticipates maintaining these measures for at least five years, provided, however, that all parties acknowledge that these measures may be modified, limited, or eliminated with respect to any successor entity, and that these measures may be modified, limited or eliminated by Escala if such modification, limitation or elimination is determined by a majority of Escala's independent directors to be consistent with applicable law and in the best interest of the Company and its shareholders.